```
                    UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF NEW JERSEY
```

|  |  |
|---|---|
| SUNOCO, INC. (R&M), | : |
|  | : Civil Action No. |
| Plaintiff, | : 06-3933  (NLH) |
|  | : |
| v. | : |
|  | : |
| MX WHOLESALE FUEL CORPORATION, | : |
| ET AL., | : **OPINION** |
|  | : |
| Defendants. | : |

**APPEARANCES:**
JEFFREY A. CARR
PEPPER HAMILTON LLP
SUITE 400
301 CARNEGIE CENTER
PRINCETON, NJ 08543-5276
*Attorney for Plaintiff*

CHARLES M. MORIARTY
CHARLES MORIARTY, LLC
212 MAPLE AVENUE
RED BANK, NJ 07701
*Attorney for Defendant MX Wholesale Fuel Corporation*

W. PETER RAGAN, SR.
BRINLEY PLAZA
BUILDING ONE
3100 ROUTE 138 WEST
WALL, NJ 07719
*Attorney for Defendant Monmouth Petroleum, Inc.*

**HILLMAN, District Judge**

Before the Court is plaintiff Sunoco Inc.'s ("Sunoco") motion for partial summary judgment and defendant Monmouth Petroleum, Inc.'s ("Monmouth") cross-motion for summary judgment. Also before the Court is Sunoco's motion to strike the

Certification of Charles Moriarty. For reasons explained below, Sunoco's motion for partial summary judgment is granted, and its motion to strike the certification is granted. Monmouth's cross-motion for summary judgment is denied.

## I. JURISDICTION

This Court exercises jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) over plaintiff's claims under the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. §§ 2801 et seq., and pursuant to 28 U.S.C. § 1332 (diversity) because there is complete diversity between plaintiff, a citizen of Pennsylvania and defendants, citizens of New Jersey.

## II. BACKGROUND

On July 29, 1996, Coastal Refining & Marketing, Inc. ("Coastal") and Monmouth entered into a series of franchise agreements. On February 5, 2001, Coastal and Sunoco entered into an assignment in which Coastal assigned to Sunoco all of Coastal's rights, title and interest in certain franchise agreements (the "first Sunoco Assignment"). On June 15, 2001, Monmouth and MX Wholesale Fuel Corporation ("MX") entered into an assignment agreement (the "MX Assignment") in which Monmouth assigned to MX all of Monmouth's rights, title and interest in the franchise agreements it had with Coastal. The MX Assignment was signed by Monmouth, MX and Coastal. On August 15, 2002, an assignment agreement was entered into between El Paso Merchant

Energy - Petroleum Company formerly known as Coastal Refining & Marketing, Inc. and Sunoco (the "second Sunoco Assignment") in which El Paso/Coastal assigned its rights and interests to Sunoco for certain franchises pursuant to an asset purchase agreement.[1]

From approximately July 2002 until August 2006, MX purchased motor fuel from Sunoco.  In 2004, certain electronic bank drafts for motor fuel purchased on credit from Sunoco were returned due to insufficient funds in MX's bank account.  The payment terms were then revised so that MX paid Sunoco in advance of picking up the motor fuel, although Sunoco continued to demand payment for the overdue amount.  On July 31, 2006, Sunoco advised MX that its account balance was overdue in the amount of $1,533,162.00 and that it was suspending all motor fuel deliveries to MX.  On August 14, 2006, Sunoco terminated the franchise agreement with MX, claiming that MX's total outstanding balance was $1,533,894.00.

Sunoco filed a motion for partial summary judgment against MX on the ground that MX admitted that it owed $1,533,894.00 to Sunoco.  In addition, Sunoco argues that Monmouth is also liable for MX's debt pursuant to the MX Assignment.  Monmouth filed a cross motion arguing that it is not liable to Sunoco.

---

[1] Attached as Exhibit A to the second Sunoco Assignment is a redacted list of "Assigned Agreements - Supply Agreements and Other Agreements" which includes "MX Wholesale Fuel Corporation, West Long Branch, NJ" showing several agreements whose terms begin on September 27, 1996, and expire on September 27, 2002.

### III.  DISCUSSION

**A.  Summary Judgment Standard**

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has

4

met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  <u>Id.</u>  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  <u>Anderson</u>, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements.  <u>Saldana v. Kmart Corp.</u>, 260 F.3d 228, 232 (3d Cir. 2001).  If review of cross-motions for summary judgment reveals no genuine issue of material fact, then judgment may be entered in favor of the party deserving of judgment in light of the law and undisputed facts.  <u>See</u> <u>Iberia Foods Corp. v. Romeo Jr.</u>, 150 F.3d 298, 302 (3d Cir. 1998) (citation omitted).

    **B.  Admissions by MX**

Sunoco argues that MX admitted it owed Sunoco money.  In its answer, MX admitted that it owed Sunoco "certain money," but denied the amount that it owed.  During discovery, Sunoco propounded interrogatories regarding the amount owed, but did not receive a substantive response.  On June 26, 2007, Sunoco served requests for admissions on MX, including a request that MX admit that it owed Sunoco $1,533,894.00, exclusive of interest and costs.  MX failed to respond to the requests for admissions within 30 days of being served.  MX finally served responses to

the admissions over one month beyond the deadline denying that it owed $1,533,894.00.[2]

Requests for admissions are governed by Federal Civil Procedure Rule 36 which permits any party to serve on any other party written requests to admit the truth of facts, the application of law to fact, opinion as to either, or the genuineness of any described document.  See Fed.R.Civ.P. 36(a)(1).  Unless the party who was served with the requests responds within 30 days of being served, the matters are deemed admitted.  See Fed.R.Civ.P. 36(a)(3).  A matter admitted under Rule 36 is "conclusively established unless the court, on motion, permits the admission to be withdrawn or amended."  See Fed.R.Civ.P. 36(b).

Sunoco argues that it is entitled to judgment in the amount of $1,533,894.00 because MX stated in its answer that it owed Sunoco a certain some of money and because Sunoco's request that MX admit it owed Sunoco $1,533,894.00 was deemed admitted due to MX's failure to reply in a timely manner.  In response, MX filed an attorney certification and attached various documents that it states it produced in mediation.  The attorney certification does not address any of the arguments raised by Sunoco in its motion. Although paragraph six of the certification states that "[t]here

---

[2] MX's responses were simply "yes" and "no" answers with no further explanation.

is a factual dispute as to the amount Plaintiff claims is owed by the Defendant," the certification does not state what facts are in dispute and does not "set out specific facts showing a genuine issue for trial." <u>See</u> Fed.R.Civ.P. 56(e)(2).  MX also did not file a brief in opposition as required by Local Rule 7.1(d)(2) (requiring a brief, specifying motion date on cover page, and proof of service to be filed with the Clerk 14 days before the motion date), and did not file a counter-statement of facts as required by Local Rule 56.1 (requiring each side to furnish a statement of material facts for motions for summary judgment).

In their reply, Sunoco argues that the attorney certification filed as opposition to their motion should be stricken since it fails to set forth any legal or factual argument.  Sunoco also argues that the certification does not meet the requirements of an affidavit under Local Rule 7.2(a) since the statements made were not within the personal knowledge of MX's attorney and because an affidavit cannot contain legal arguments.  <u>See</u> Local Rule 7.2 (stating that "[l]egal arguments and summations in affidavits will be disregarded by the Court and may subject the affiant to appropriate censure, sanctions or both.").

Without requesting the Court's permission, MX then filed a sur-reply.  <u>See</u> Local Rule 7.1(d)(6) (stating that no sur-replies are permitted without permission of the Judge).  The sur-reply

consisted of a cover letter from MX's attorney and a certification by Ronald Brousell, President of MX ("Brousell certification"). MX's attorney's letter states that he agrees that he does not have personal knowledge of the relationship between Sunoco and MX and that the purpose of his certification was to show that MX supplied Sunoco with all the documents MX intends to rely on including its expert's report. In his certification, Mr. Brousell states that he hired an accountant to review MX's records in order to determine the amount, if any, owed to Sunoco. He further states that he supplied Sunoco with the report of his expert, Jack W. Kinas, CPA, who opined that although fuel was delivered to MX by Sunoco, it is Sunoco that owes money to MX due to various breaches of the agreement by Sunoco.

The Court finds that the attorney certification filed by MX in opposition to Sunoco's motion for partial summary judgment is deficient and does not properly follow Federal Civil Rule 56(e), Local Rules 7.1(d)(2), 7.2, or 56.1. It does not set out specific facts showing a genuine issue for trial; it does not contain a brief in opposition; it does not provide facts within the personal knowledge of the affiant; and it does not contain a statement of facts. Cf. Albrechtsen v. Board of Regents of University of Wisconsin System, 309 F.3d 433, 436 (7th Cir. 2002) (stating "'Judges are not like pigs, hunting for truffles buried

in' the record."(quoting United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991)).  As such, the certification of MX's counsel is stricken.

The sur-reply was also filed in violation of the Local Rules.  See Local Rule 7.1(d)(6).  However, unlike the attorney certification filed in response to the motion, the sur-reply contains a certification by the President of MX as to facts within his personal knowledge.  Although the Court need not consider any sur-reply filed without permission, we do so here because no response to the motion was ever filed by MX's attorney and his attorney certification is stricken as improper.  Cf. Keith v. Itoyama, No. 06-424, 2006 WL 3069481, at *1 n.3 (D.N.J. Oct. 27, 2006)(considering sur-reply filed without permission because court found it helpful in resolving case on the merits).

Having provided permission nunc pro tunc to MX to file a sur-reply, the question is whether it sets out any specific facts showing a genuine issue for trial.  In deciding Sunoco's motion, it must be determined whether a material issue of fact remains regarding: (1) whether MX owes Sunoco any money and, if so; (2) in what amount.  Sunoco has argued that MX has in its answer to the complaint and by its failure to answer requests for admissions, admitted that it owes Sunoco $1,533,894.00.

There is no dispute that MX admitted in its answer to the complaint that it owes Sunoco money.  There is also no dispute

that MX did not provide timely responses to Sunoco's requests for admissions.  Pursuant to Rule 36, by failing to timely respond, the matters addressed in Sunoco's requests are deemed admitted. See Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976)(finding that deemed admission was properly considered in motion for summary judgment), cert. denied Mead Johnson & Company v. Goodman, 429 U.S. 1038 (1977).

Although Rule 36 permits an admission to be withdrawn or amended by the Court upon motion, see Fed.R.Civ.P. 36(b), MX has never filed a motion for leave to withdraw or amend the deemed admissions.  See Petrunich v. Sun Bldg. Systems, Inc., No. 04-2234, 2006 WL 2788208, at *3 (M.D.Pa. Sept. 26, 2006) (admissions deemed admitted after denial of motion to withdraw or amend requests for admissions because grounds for amendment or withdrawal in Rule 36(b) were not established).  Even though MX never filed such a motion, we recognize that a disposition on the merits is preferred over a decision based upon procedural technicalities.  Id. (acknowledging that the court has considerable discretion in determining whether to grant a motion for withdrawal or amendment of an admission).  Had MX filed a motion for withdrawal or amendment, we would engage in a two-part, conjunctive inquiry.  Id.  "First, the moving party... must establish that withdrawal or amendment will 'subserve' the presentation of the merits."  Id. (citing Fed.R.Civ.P. 36(b);

Dunn v. Hercules, Inc., No. 93-4175, 1994 WL 194542, at *1 (E.D.Pa. May 12, 1994)). "Second, the nonmoving party... must fail to show he would be prejudiced by permitting Defendants to amend or withdraw their admissions." Id. (citing Fed.R.Civ.P. 36(b); The Maramont Corp. v. B. Barks & Sons., Inc., No. 97-5371, 1999 WL 55175, at *3 (E.D.Pa. Jan. 13, 1999)).

MX has not raised any claim that Sunoco's requests for admissions were improper or provided any reason why they failed to timely respond to the requests for admissions. MX has not stated that it requested any extension to file responses to the requests for admissions. Even if MX had filed a motion to withdraw or amend the admissions, Sunoco has raised arguments that show that it would be prejudiced if MX's deemed admission that it owed $1,533,894.00 were withdrawn. MX admitted in its answer to the complaint that it owed Sunoco money. To withdraw its deemed admission that it owed Sunoco money would be prejudicial because it is in direct contrast to what it admitted in its answer to the complaint. See Petrunich, 2006 WL 2788208, at *3 (deeming as admitted late admissions where defendants' late response was not consistent with its answer to complaint). We also note that when MX served its untimely responses, its response to Sunoco's request that it "[a]dmit that MX owes Sunoco a certain sum for motor fuel" and its request that it [a]dmit that MX owes Sunoco $1,533,894.00 (exclusive of interest, fees,

11

costs and counsel fees)" was a simple "no" with no further explanation.  It was not until after Sunoco filed its motion for summary judgment, and not until MX filed its sur-reply, that MX raised for the first time that it was taking the position that Sunoco owed MX money due to breaches by Sunoco of the agreement.

Further, MX never provided the Court with any brief explaining its position that Sunoco owed it money.  Rather, Mr. Brousell refers to the expert report in his certification attached to MX's sur-reply.  The only report attached is a bold face typed summary that is undated, unsigned and not on letterhead.  The report sometimes uses the pronoun "we" suggesting that it was written by the defendant and not by its expert.  There is also no clear conclusion as to the amount that MX suggests that it is owed by Sunoco.  MX has merely denied owing the money without any facts to support its assertion. See Anderson, 477 U.S. at 256-57; Saldana, 260 F.3d at 232 (a summary denial is not enough to withstand summary judgment; a party opposing summary judgment must identify specific facts and affirmative evidence that contradict those offered by the moving party and cannot just rest upon mere allegations, general denials, or vague statements).

Thus, we find that MX admitted in its complaint that it owed Sunoco a certain sum, and admitted (as deemed) that it owed Sunoco the sum of $1,533,894.00.  We also find that MX did not

12

file a motion to withdraw or amend the admissions, or provide any reason for its failure to timely respond, and even if it did, that Sunoco has shown that it would be prejudiced by the withdrawal of the admissions since it was not until after Sunoco filed its motion for summary judgment that MX raised for the first time its argument contrary to its earlier statements that it did not owe Sunoco money.  Finally, even after exercising our discretion to consider the late-filed sur-reply, defendant has failed to demonstrate a material issue of fact as to either the existence of the debt or its amount.  Therefore, summary judgment is found in favor of Sunoco on its claim that MX owes it $1,533,894.00.

      **C.   Sunoco's Motion against Monmouth and Monmouth's Cross Motion for Summary Judgment**

      **1.   Monmouth's Assignment to MX**

Monmouth admits that in 1996 it entered into a franchise agreement with Coastal, and then on June 15, 2001, entered into an assignment agreement with MX whereby Monmouth assigned and transferred to MX all its rights under the franchise agreement. Neither party disputes the fact that Coastal signed the MX Assignment.  There is also no dispute that under the franchise agreements Coastal could freely assign its own rights and interests.  See Aronsohn v. Mandara, 484 A.2d 675, 679 (N.J. 1984) (stating that contract rights may be assigned if there is no prohibition on assignment) (citing 4 A. Corbin, On Contracts §

857, at 410; § 872, at 485-86; § 873, at 494 (1951)); Schlessinger v. Forest Products Co., 76 A. 1024, 1026-27 (N.J. Err.& App. 1910) (finding that absent an express agreement to the contrary, New Jersey law permits assignment and delegation of contractual rights and duties).

Monmouth also admits that the MX Assignment clearly states that Monmouth "acknowledges and agrees that this assignment does not release [Monmouth] from any liability or obligation that is or may be owed to Coastal Refining & Marketing, Inc. under the Agreement." Relying on the allegations in the complaint filed by Sunoco,[3] Monmouth first tries to argue that since Sunoco and Coastal entered into an assignment agreement on February 5, 2001, before Monmouth entered into the assignment with MX, that Monmouth's liability to Coastal in the MX assignment was to Coastal only, and not to Sunoco. However, Sunoco states that although it entered into an assignment agreement with Coastal on February 5, 2001, that assignment pertained only to dealer franchise agreements with direct retail dealers, not distributors

---

[3] In paragraph 14 of its complaint, Sunoco states that:

> On February 5, 2001, Coastal Mart, Inc. ("Coastal") and Sunoco entered into an Assignment and Assumption Agreement pursuant to which Coastal assigned to Sunoco all of Coastal's rights, title and interest in certain Franchise Agreements including the one subject of this Complaint as described more fully below.

14

like Monmouth and MX.  Sunoco states that the assignment of the distribution agreements took place on August 15, 2002, after Monmouth assigned its franchise agreement to MX.

Sunoco admitted that it erred in stating that the distributor franchise agreements were assigned in February 2001. Dolores Love, Area Manager for Sunoco, submitted a declaration stating that the assignment agreement between Coastal and Sunoco entered into in February 2001[4] only assigned dealer agreements with direct retail dealers, not distributors, and that the assignment of the distribution agreements, such as MX's, occurred on August 15, 2002.  Monmouth does not dispute Sunoco's argument that the assignment of the distributor franchise agreements did not occur until after its assignment agreement with MX. Therefore, Monmouth's argument that it is not liable to Sunoco because Coastal assigned its rights to Sunoco before the MX Assignment without naming Sunoco on the MX Assignment is not factually accurate and we reject it.[5]

---

[4] The declaration states that the agreement was entered into on February 15, 2002.  In the briefs, Sunoco states that the assignment was entered into on February 5, 2001.  This discrepancy appears to be nothing more than a typo.

[5] We do not fault Monmouth for making this argument initially as it reasonably relied on the allegations in Sunoco's complaint.  Nonetheless, the record is now clear and there is no dispute that the distributor franchise agreements from Coastal to Sunoco occurred in August 2001, after Monmouth assigned its right to MX.

## 2.  **N.J.S.A. 12A:2-210(1)**

Sunoco argues that Monmouth is an obligor pursuant to Section 2-210(1) of the UCC, as codified at N.J.S.A. 12A:2-210(1).  N.J.S.A. 12A:2-210(1) states:

> A party may perform his duty through a delegate unless otherwise agreed or unless the other party has a substantial interest in having his original promisor perform or control the acts required by the contract. No delegation of performance relieves the party delegating of any duty to perform or any liability for breach.

Monmouth does not address the applicability of N.J.S.A. 12A:2-210(1).  There is also a dearth of opinions interpreting this particular section.[6]  However, based on the clear language

---

[6] Only two cases were found by the Court that cite to this section of the statute, but neither of them address the scope of liability retained by the assignor under § 12A:2-210(1).  In Florham Park Chevron, Inc. v. Chevron U.S.A., No. 86-4748, 86-5107, 1990 WL 61787, at *6, *8 n.5 (D.N.J. May 9, 1990), the court acknowledged that New Jersey has adopted section 2-210 of the Uniform Commercial Code ("UCC") and that N.J.S.A. § 12A:2-210(1)-(2) is applicable to the sale of motor fuels.  In the second case, Sawhney v. Mobil Oil Corp., 970 F.Supp. 366 (D.N.J. Jul 10, 1997), the only reference to N.J.S.A. § 12A:2-210(1) was the court's statement in dicta that "[t]o be sure, Mobil's delegation of its contractual duties does not relieve it of its duty to perform under the franchise agreement, or its liability to plaintiff in case of a breach." Id. at 372 (citing N.J.S.A. § 12A:2-210(1)).  That case, however, was reversed in an unpublished opinion by the Third Circuit.  See Sawhney v. Mobil Oil Corp., 173 F.3d 421 (3d Cir. Dec 11, 1998). In the Third Circuit opinion, the Court acknowledged that the Petroleum Marketing Practices Act does not expressly permit nor prohibit assignment of franchise agreements and held that state law governs the legality of such assignments.  See Sawhney, No. 96-5875, slip. op. at 5 (3d Cir. Dec. 11, 1998)(unpublished). Although the Third Circuit did not specifically address the lower court's reference to N.J.S.A. § 12A:2-210(1), it did state that

16

of the statute, we find that N.J.S.A. § 12A:2-210(1) is applicable and that Monmouth is not relieved of its duty to perform or its liability for breach. Under N.J.S.A. § 12A:2-210(1), a party may delegate performance under the contract to another party, but cannot delegate its duty to perform or its liability for breach. For example, here, Monmouth could delegate to MX its right to purchase and sell Coastal gas, but could not under N.J.S.A. § 12A:2-210(1) delegate to MX its duties or liabilities, such as Monmouth's contractual duty to pay Coastal, or Coastal's successors, for the gas.

There is no language in the contract expressing an intent by the parties to relieve Monmouth of its duties under N.J.S.A. § 12A:2-210(1), or an intent to relieve Monmouth of its duty to perform or liability for breach. Rather, the language in the contract appears to express an intent that the parties were to remain bound under the provisions of N.J.S.A. § 12A:2-210(1).

Thus, without an express intent by the parties to relieve Monmouth of its duty to perform or its liability for breach, the provisions in N.J.S.A. § 12A:2-210(1) apply and Monmouth remains

---

under subsection (2) of that statute, that New Jersey law permits assignments "unless otherwise agreed." Id.; see N.J.S.A. § 12A:2-210(2). Therefore, although there is no case law interpreting the scope of liability retained by the assignor under § 12A:2-210(1), Florham Park and Sawhney provide that franchise contracts concerning the sale of motor fuel are governed by state law concerning assignments and by applicable U.C.C. provisions.

liable under the terms of the contract.

### 3. Guaranty

Alternatively, Monmouth argues that it is not liable for the debts of MX because the MX Assignment did not create a guaranty for Monmouth to pay the debts of MX.

"For an instrument to be enforceable as a guaranty, it must show, with reasonable clarity, an intent to be liable on an obligation in case of default by the primary obligor, and the agreement must contain the express conditions of the liability and obligations of each party within the four corners of the document." 38 Am.Jur.2d Guaranty § 5. Further, "[i]f the language chosen by the parties indicates an intention to answer for the principal debt or obligation of another person, the writing should be construed as a contract of guaranty." Id.

When interpreting the provisions of a guarantee, courts look to the rules governing construction of contracts generally. See Center 48 Ltd. Partnership v. May Dept. Stores Co., 810 A.2d 610, 619 (N.J.Super.A.D. 2002) (citing Garfield Trust Co. v. Teichmann, 95 A.2d 18 (N.J.Super.A.D. 1953); First Bank & Trust Co. v. Siegel, 115 A.2d 152 (N.J.Super.L.D. 1955). "Guarantee agreements should be strictly construed and their language interpreted most strongly against the party at whose insistence such language was included." Id. (citing Nat'l Westminster Bank N.J. v. Lomker, 649 A.2d 1328 (N.J.Super.A.D. 1994), cert.

denied, 663 A.2d 1361 (N.J. 1995); Housatonic Bank & Trust Co. v. Fleming, 560 A.2d 97 (N.J.Super.A.D. 1989); Garfield, 95 A.2d at 18; First Bank, 115 A.2d at 152. "It is fundamental that a guarantor is not bound beyond the strict terms of its promise and its obligation cannot be extended by implication." Id. (citing Housatonic, 560 A.2d at 97).

Monmouth argues that nowhere in the MX Assignment does it agree to the be guarantor of MX, nor is the word "guaranty," "guarantor" or "guarantee" ever used. Monmouth also argues that the MX Assignment does not include language indicating that Monmouth agrees to be liable for the debts of MX. Sunoco does not dispute Monmouth's argument that the MX Assignment does not create a guaranty.

We agree that the language in the MX Assignment does not create a guaranty. However, the reason Monmouth is not a guarantor is not because the language does not create guarantee but because Monmouth remains the primary obligor on the contract. Monmouth's argument assumes that MX is the primary obligor and that Monmouth in order to be a guarantor would have had to show an intent to be liable in the case of MX's default. This assumption turns the facts on their head. Here, Monmouth is the primary obligor and under N.J.S.A. 12A:2-210(1) remains liable for its liabilities and the liabilities of MX. Thus, there is no guarantee and Monmouth is the primary obligor under the contract.

## IV. CONCLUSION

For the reasons explained in this Opinion, Sunoco's motion for partial summary judgment is granted.  Sunoco's motion to strike the certification of Charles Moriarty is granted. Monmouth's cross-motion for summary judgment is denied.

An Order consistent with this Opinion will be entered.

                                        s/Noel L. Hillman
                                        NOEL L. HILLMAN, U.S.D.J.

At Camden, New Jersey